IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-1120-RBJ-MEH

NICK LYNCH,

    Plaintiff.

v.

ADAM BARRETT,
SGT. STEPHEN KENFIELD,
MICHAEL MORELOCK,
ABBEGAYLE DORN, and
THE CITY AND COUNTY OF DENVER.

    Defendants.

## ORDER

This matter is before the Court on defendant's Motion for Summary Judgment [#43] and defendant's Motion to Strike Response to Motion [#56]. Both motions are fully briefed and ripe for review.

**FACTS**

This case has an unusual procedural history, being the second of two cases to arise out of a single incident. The event that gave rise to both actions occurred on March 29, 2008 outside of a club in lower downtown Denver. [#1] at ¶5. Mr. Lynch was in an argument with another man. According to him he believed he was about to be hit and "preemptively" struck the other man. *Id.* at ¶6. Then, fearing that he would be charged with assault, Mr. Lynch fled the area and hid in some bushes near the intersection of 20th Street and Larimer Street. *Id.* at ¶6. Approximately three to six officers discovered him. Mr. Lynch alleges that when the officers approached, Mr.

1

Lynch rose from his hiding place but was then thrown to the ground and hit six times in the left thigh with either a baton or a flashlight. *Id.* at ¶7. He claims that because he was face-down on the ground, he could not identify who threw him to the ground or who struck him. *Ibid.* However, he alleges that Sgt. Stephen Kenfield, and Officers Adam Barrett, Michael Morelock and Abbegayle Dorn were present at the scene and witnessed the arrest.

In his first suit, *Lynch v. Barrett,* No. 09CV405 (*Lynch I*), Mr. Lynch asserted that officers Barrett, Dorn, Morelock and Eric Golladay violated his constitutional rights by using excessive force during the arrest and by denying him access to the courts when they intentionally refused to reveal the identity of the officer or officers who used excessive force. The Court granted summary judgment dismissing the access-to-courts claim without prejudice, based on its finding that "[p]laintiff has yet to experience a concrete injury, or denial of meaningful relief, and therefore, his access-to-courts claim is unripe." *Lynch I,* 2010 WL 3938359, at *6 (D. Colo. October 5, 2010)(Kane, J). The excessive force case went to trial, but at the close of plaintiff's evidence, the Court granted the defendant's oral motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. The Court concluded that Mr. Lynch had not presented evidence sufficient to find that any of the four individuals had used excessive force or had failed to take reasonable steps to intervene and prevent the harm. Reporter's Transcript, Feb. 3, 2011 [docket #137] at 7.

Having failed to obtain relief in the excessive force trial, Mr. Lynch then filed the present lawsuit on April 27, 2011. He alleges that Sgt. Kenfield and Officers Barrett, Morelock and Dorn know who was involved in the arrest and who struck him, but they have failed and refused to identify the perpetrator(s). Complaint [#1] ¶20-21. He further alleges that the officers' collective silence when faced with a claim an officer administered excessive force is condoned by the Denver Police Department and, therefore, by the City and County of Denver, thus

allowing officers who are aware of this practice to cover up instances of excessive force without fear of reprisal. *See id.* ¶¶25-28. Mr. Lynch asserts that, as a result, excessive force was used, but he was unable to identify the perpetrators, was unable to prove his excessive force claim, and was denied his constitutional right to have access to the courts to obtain relief.

### STANDARD

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### CONCLUSIONS

**Motion to Strike [#56].**

As a preliminary matter, the Court must address defendant's Motion to Strike. A juror in *Lynch I* contacted Mr. Lynch's counsel after the Court dismissed the case and expressed opinions about the credibility of the police officers and whether a cover-up had occurred. [#48-1]. The unsolicited email then became a centerpiece of plaintiff's response to the pending summary

3

judgment motion, allegedly demonstrating the existence of a genuine dispute of material fact as to whether there was in fact a cover-up. [#48] at 1-2, 5, 11, 12. Defendants complain that the use of the juror's email was "completely inappropriate" for various reasons, and that the Court should consider sanctioning plaintiff's counsel for attempting to prejudice the Court against the defendants.

This is a tempest in a teapot. The reaction of a juror to witnesses who testified in the trial of *Lynch I* is irrelevant to the present case. Even if the juror's opinion caused the Court to question any witness' credibility, which it does not, the Court would not make a credibility determination in ruling on a motion for summary judgment. Credibility is the province of the jury, namely, the jury that will be empaneled to hear this case. The Court agrees that reference to the email in plaintiff's response to the pending motion was not appropriate. It was also harmless. The Motion to Strike [#56] is GRANTED, but the Court declines the suggestion that sanctions be awarded against plaintiff's counsel.

### Motion for Summary Judgment [#43]

Defendants argue that that they are entitled to summary judgment for three reasons: (1) the individual defendants are entitled to qualified immunity; (2) judicial estoppel bars claims against Officer Dorn; and (3) Mr. Lynch has no evidence of municipal liability on the part of the City of Denver.

#### Qualified Immunity

To avoid summary judgment based upon qualified immunity, Mr. Lynch "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). A right

may be deemed clearly established if "it would be clear to a reasonable police officer that his conduct was unlawful under the circumstances presented." *Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009).

This Court is satisfied that intentional concealment of evidence by a police officer that interferes with an individual's ability to obtain redress for police misconduct is unconstitutional. *See Donohue v. Hoey,* 109 F. App'x 340, 356 (10th Cir. 2004) (unpublished). *See also Jennings v. City of Stillwater,* 383 F.3d 1199, 1207-08 (10th Cir. 2007). This Court is also satisfied that it would be clear to a reasonable police officer that intentional concealment of evidence of another officer's misconduct, the so-called conspiracy of silence, is unlawful. Accordingly, if these officers did intentionally conceal evidence of another officer's administration of excessive force, they are not entitled to qualified immunity.

The question remains whether Mr. Lynch has presented sufficient evidence to raise a genuine issue of material fact as to whether these defendants violated his right of access to the courts. To begin, plaintiff has presented the affidavit of an alleged eyewitness, Cody Steiner. [#48-3]. He states that he was able to see, from across the street, that four police officers jumped over a fence, walked towards the bushes where Mr. Lynch was hiding, and struck him while he was lying down. *Id.* ¶2. Mr. Steiner is a friend of Mr. Lynch, and his credibility is subject to question. However, that is not at issue on a motion for summary judgment.

Mr. Lynch has indicated in an affidavit that he was thrown down and struck several times in the back of his left thigh and ankle. [#48-4] ¶2-3. He has photographs that purportedly show bruises resulting from the beating.

Plaintiff was unsuccessful in his effort to prove that the officers named as individual defendants used excessive force. However, he maintains that they were in a position to have

observed who, if anyone, did administer such force. Officer Barrett testified that he could not estimate how many officers went to the bushes to apprehend Mr. Lynch, and he could not hear what the officers were saying (or, implicitly, see what they were doing). Barrett Depo. [#43-6], at 32:4-25, 33:1-3, 17-25. However, he also testified that as he approached the bushes he "saw Mr. Lynch start to stand up, and then the officers rushed the bush, and he was taken down." *Id.* at 30:20-23. This testimony raises the factual questions of whether Officer Barrett saw who rushed Mr. Lynch, who arrested him, and who either used excessive force or was in a position to know who, if anyone, did. The credibility of Officer Barrett's testimony, like that of the other officers, is also unresolved.

Officer Morelock states in an affidavit that "[a]fter I went over the fence, I turned toward the bushes and noticed several other officers already present. Therefore, I ran over to assist them." [#43-5] at ¶5. Officer Barrett testified in his deposition that Officer Morelock climbed the fence with him. [#48-2] at 28. He does not recall other officers' being there at that time. *Id* at 28-29. Officer Morelock states that he was not present at the time that Mr. Lynch was apprehended and handcuffed, and he does not know who handcuffed or assisted in the handcuffing. *Id.* at ¶6. He states that he has no recollection of the officers who were present at the arrest, and that he only remembers that he saw the other three officers named in this action. *Id.* at ¶13. Again the credibility of this testimony is unresolved. There is at least some evidence that he was in a position to observe the arrest or, at least, who participated in it.

Sgt. Kenfield reports in his affidavit that he did not participate in the arrest or witness it. [#43-4] at ¶5. He states that "at no time did I witness any of the officers who were present hit or strike Plaintiff in the left leg." *Id.* at ¶6. He adds that he does not recall the specific identities of the officers who responded to the call. *Id.* at ¶11. However, Sgt. Kenfield also reports that even

6

though it took him four to five minutes to get over the fence, several officers were already present in the fenced-in area. *Id.* at ¶5. He was, by his own admission, in the near vicinity of the arrest when it happened and saw which officers were present.

In her deposition Officer Dorn described where she climbed the fence surrounding the property where Mr. Lynch was discovered and apprehended. Exhibit 2 to plaintiff's "Response to Request Regarding Officer Dorn"[#46-2] at 17. She testified that once she was inside the fence she saw that the suspect (Mr. Lynch) was already cuffed and being held by Officer Morelock. *Id.* at 21. She did not see the suspect before he was in handcuffs. *Id.* at 22. She did not see him in the bushes. *Id.* at 31. According to Mr. Lynch in his Response to Request Regarding Officer Dorn, this deposition testimony suggested that Officer Dorn was not in a position to have witnessed who performed the alleged assault. [#46] at 2. Therefore, in September 2009 when plaintiff amended his complaint in *Lynch I*, he omitted Officer Dorn. *Ibid.*

Plaintiff's counsel indicates that on January 25, 2011 the defendants produced a videotape of a statement previously given by Officer Dorn. For reasons unknown, and contrary to the Court's request at a Status Conference on February 16, 2012, plaintiff did not provide a CD of the videotaped statement to the Court. Rather, counsel provided what he represents are correct quotations from the videotape. He quotes Officer Dorn as stating that when she jumped over the lockbox (to climb over the fence) she saw the suspect stand up from behind the bushes, in handcuffs. She thought that he looked like an Hispanic male, and she heard him say, "I'm right here." [#46] at 3. Counsel interprets these quotes as indicating that Officer Dorn could hear and see Mr. Lynch as she was climbing over the fence; that she probably was within 20 to 30 feet from him; that she climbed over the fence in a different location than where she indicated

7

in her deposition; and that she, therefore, would have been in a position to have seen the officers who assaulted Mr. Lynch. *Ibid.* Based on this newly acquired evidence, plaintiff named Officer Dorn as a defendant in the present case.

It is troubling that the plaintiff has not provided the videotape statement or a transcript of it to the Court. On the other hand, neither have the defendants. Defendants devote a great deal of their response to an argument that plaintiff's counsel knew or should have known about the contents of the videotaped statement. I need not get into that debate, because I find and conclude that the statements attributed to Officer Dorn, even when construed in plaintiff's favor, do not provide evidence that she saw who participated in the arrest or any part of the arrest as it occurred.

It is significant that Officer Dorn's deposition testimony was sufficient to persuade plaintiff that he had no good faith basis for keeping Officer Dorn in the case. The excerpts from the videotaped statement, even assuming as I do that they are accurate and were not unfairly taken out of context, do not overcome that. Although she might have been close to Mr. Lynch when he emerged from some bushes in handcuffs and said "I'm here," her statement provides no evidence that she witnessed any part of the arrest, or that she witnessed who participated in the arrest, or even that she was present when the arrest occurred. Plaintiff's inference that "she would have been in a position to have seen the officers who allegedly assaulted Mr. Lynch" is speculative on the record presented. It is not enough to cause Officer Dorn to go through the ordeal of a trial in this case.

Judicial Estoppel

Defendants argue that plaintiff should be barred by the doctrine of judicial estoppel from bringing Officer Dorn into this case after he voluntarily dismissed his claims against her in

*Lynch I. See New Hampshire v. Maine,* 532 U.S. 742, 751 (2001) (elements of judicial estoppel). The Court does not reach this issue in light of its finding that plaintiff has not shown that there is a genuinely disputed issue of material fact concerning Officer Dorn's alleged participation in a cover-up.

<u>City and County of Denver</u>

A municipality is not vicariously liable for the unconstitutional acts of its employees. *Monell v. Department of Soc. Services,* 436 U.S. 658, 695 (1978). However, liability under §1983 can be established if it can be shown that a constitutional violation resulted from execution of a municipality's practice or custom. *Ibid.* An "act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Com'rs of Bryan County, Okla. v. Jill Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). The plaintiff must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997) (internal citation omitted). If a municipality is deliberately indifferent to or tacitly approves unconstitutional conduct that is continuing and widespread, and if such conduct results in an injury to the plaintiff, then municipal liability can be established. *Cf. Gates v. Unified School Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

Plaintiff's description of the alleged policy or custom in this case has been something of a moving target. In his Complaint he alleges:

- "[T]he officers know that the policy department will not discipline nor terminate them for maintaining their silence." Complaint ¶13.

- "The City has deliberately chosen to take the side of the officers in cases such as this one, even where there is strong circumstantial evidence that the officers are covering up what happened." *Id.* ¶14.
- "Although the department had substantial evidence that Mr. Lynch suffered injuries during the incident, and although the department knew that the defendant officers were present on the scene and would know who had used the force against Mr. Lynch, the department deliberately chose not to discipline any officer for the cover-up." *Id.* ¶15.
- "Even though the City states that an officer may be terminated for lying regarding what happened during an incident, the officers know that the City does not enforce this policy and that only in exceptional circumstances will the department even discipline an officer for lying." *Id.* ¶16.
- "The police department for the City and County of Denver has adopted an official practice and custom of not disciplining officers unless the evidence against them is clear." *Id.* ¶25.
- "Even though there may be significant circumstantial evidence that a Denver police officer or officers have used unreasonable force, the City will not discipline the officers absent conclusive direct evidence of who used the force. In addition, the City has adopted a practice that it will not discipline officers involved in a cover-up or lying about what occurred." *Id.* ¶26.

In plaintiff's response to defendants' motion to dismiss, earlier in this case, the policy was summarized as "the City had allowed the officers to lie about their improper conduct and the City chose to do nothing (until recently)." [#13] at 11. In plaintiff's response to the pending motion for summary judgment, he states, "the City had a policy of not pursuing potential police

10

coverups (sic) unless there was conclusive proof of the cover-up. That is, the City established a system that allowed its officers to cover up the facts when they used excessive force." [#48] at 5. Later, he characterizes the custom or practice as "the policy that prevents the City from questioning the officers herein, except where Mr. Lynch can present compelling evidence to do so." *Id.* at 12.

Putting these several allegations and statements together, the Court's interpretation is that plaintiff accuses the Denver Police Department of having had, in and before 2008, a practice or custom of accepting police officers' statements that they did not observe or do not recall an alleged incident of the use of excessive force without investigation of the truthfulness of those statements unless the evidence that excessive force was administered is clear and indisputable.

In the pending motion the City cites evidence that the Denver Police Department did conduct an investigation once Mr. Lynch came forward with his complaint that excessive force was used. Although officers might not have recalled who all was involved in the arrest, this was understandable given Mr. Lynch's eight-month delay in making his claim. The investigation resulted in a determination that excessive force had not been proven, and that no discipline was appropriate, but that does not prove that facts were covered up. I agree.

Plaintiff's response makes a number of arguments about the existence of a practice or custom, but the only "evidence" submitted is (1) statements of city officials reported in the media, and (2) the undisputed fact that the Denver Police Department has elected not to ask officers whose statements are questioned to submit to a polygraph examination. There can be any number of reasons why polygraph examinations are not used, and the Court has insufficient

information to consider this as a factor in deciding the pending motion.[1] However, information in one newspaper article about statements attributed to former safety manager Al LaCabe is relevant.

According to an article in The Denver Post of December 2, 2011 [#48-10], Mr. LaCabe testified at Civil Service Commission hearing on December 1, 2011 that an incident involving a Denver police officer's beating of a juvenile was unusual, not because of the violence per se but because the injuries were severe, and because two officers reported the action of the third officer. According to the article, Mr. LaCabe indicated that there is a culture in the Denver Police Department that accepts officers' roughing up suspects within certain boundaries, and that so long as the injuries are not too severe, officers rarely report fellow officers. The article quotes Mr. LaCabe as having testified, "[i]f you can write a report that says this is consistent with falling down, this is consistent with running through branches," there is little chance of punishment. *Ibid.*

This article is not admissible evidence. However, Mr. LaCabe is listed as a "will call" plaintiff's witness. [#55-1] at 1. Assuming that it can be established that Mr. LaCabe is a competent witness who has personal knowledge of the substance of the reported statements, his testimony presumably is admissible. Hearsay testimony ordinarily is not considered because "a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'" *Wright-Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1268 (10th Cir. 1998). This is not, however, simply a third party's description of Mr. LaCabe's supposed testimony. The statements were apparently made in the form of testimony at a Civil Service Commission hearing, presumably under oath. A recording of the testimony is available, *see*

---

[1] The Court has no information about whether the Department uses such examinations for any purpose; or about the Department's resources for conducting such examinations; or the Department's reasons for not using such examinations when investigating claims that officers are lying or covering up evidence.

Response [#48] at 7 n.10. Defendants have not questioned the accuracy of the reporter's description of the testimony.

Likewise, I do not agree that *Thomas v. International Business Machines,* 48 F.3d 478, 485 (10th Cir. 1995) or *Estate of Smith v. Silvas,* 414 F. Supp. 2d 1015, 1020 n. 5 (D. Colo. 2006) compel the conclusion that statements of this kind can never be considered in the summary judgment context. It depends on the facts and circumstances of the particular case. Accordingly, although the presentation of Mr. LaCabe's potential testimony via media accounts of previous testimony and statements rather than by an affidavit or through deposition testimony is unusual, the Court finds in the circumstances that the description of the substance or content of the evidence has sufficient reliability to be considered for summary judgment purposes.

The Court further finds, based upon that evidence, that plaintiff has met his burden of showing that there is a genuine factual dispute regarding the existence of the custom or practice on which plaintiff pins his claim against the City and County of Denver. Given the nature of the custom or practice, which allegedly was well known by Denver police officers, the Court also finds that there is a genuine issue of material fact as to whether the custom was a contributing cause of the so-called cover-up in this case. Therefore, summary disposition of the claim against the City is inappropriate.

**Order**

1. Defendants' Motion for Summary Judgment [#43] is GRANTED in part and DENIED in part. It is granted as to Officer Dorn; plaintiff's claims against her are dismissed with prejudice. The motion is denied as to Sgt. Kenfield, Officer Barrett, Officer Morelock and the City and County of Denver.
2. Defendants' Motion to Strike [#56] is GRANTED.

DATED this 24th day of May, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge